Common Pleas Court of Hamilton County.

## HAROLD F. DOWNING V. MAX GOLDBERG.
## F. X. BAURICHTER V. GORDON CRAIL.

Decided February 15, 1932.

*Charles C. Boyle,* for plaintiff in error, Downing.
*A. I. Murdock,* for plaintiff in error, Baurichter.
*Forney & Schreiber,* for defendant in error, Goldberg.
No appearance for defendant in error, Crail.

DARBY, J.

The plaintiff in error is a physician, and brought suit against the defendant for professional services rendered to the child described as a "baby", in consultation with Doctor Woodward at Christ Hospital. No statement of defense was filed, and upon hearing judgment was entered for the defendant.

The bill of exceptions is very brief, and sets forth that plaintiff testified that he is a specialist in infant diseases, that he was called "into consultation by Doctor Woodward to prescribe and give advice about defend-

ant's baby, who at that time was at Christ Hospital. On May 26 he spent one hour with Doctor Woodward, and on the night of May 27th he again returned and was with Doctor Woodward from 11 P. M. to 2 A. M. in the morning. On the second evening, namely, May 27th, he met the defendant, the father of the baby, at Christ Hospital."

The plaintiff testified that his services were reasonably worth $20.00; that he had not rendered any bill to Doctor Woodward; that it was not the custom in such cases to render bills to the physicians calling consultants.

The defendant testified that his baby was at the hospital as stated, that he had employed Doctor Woodward to attend the baby, that he did not employ plaintiff nor any other doctor than Doctor Woodward, and that he did not hire, or authorize directly or indirectly, the employment of any one besides Doctor Woodward.

No opinion or statement of the court appears as to the basis of the judgment, but it is assumed that it was on the ground that there was no contract between the defendant and the plaintiff.

It is clear that the plaintiff met the defendant at Christ Hospital at the time of the plaintiff's second visit to the child, and there is nothing to indicate any objection to the services being rendered by the plaintiff. It is fairly inferable that the case was one of emergency, and that the plaintiff was called because of his special training in such cases, to save the life of the child.

The defendant is unquestionably responsible for the support of the child, and the only question in the case is as to whether or not the plaintiff may recover under the circumstances stated.

In a number of cases which the court has examined, the services of a consultant were rendered with the consent of the defendant, so that if the defendant knew that the plaintiff was rendering services for his child, even at the invitation of Doctor Woodward, and he accepted those services, he would be liable for them. 48 C. J., 1162 (Physicians and Surgeons Sec. 181):

"A physician or surgeon summoned in consultation

by another may recover of the patient compensation for his services, notwithstanding an agreement between the patient and the attending physician that the latter would pay for such services, unless the consulting physician expressly or impliedly assents to the agreement."

In *Sheldon* v. *Johnson*, 40 Ia., 84 it is held:

"A physician who is called to a consultation by an attending physician for his own benefit, in accordance with an agreement between the latter and his employer that the attending physician shall pay the expense of the consultation, can recover for his services from the employer under an implied contract, notwithstanding the agreement."

A contract to pay arises from implication, where it is reasonably apparent that under the conditions it was necessary or proper for the attending physician to call a consultant, as in this case. See—3 Page on the Law of Contracts, Section 1521, where it is stated:

"* * *Like considerations apply where A is chargeable with B's support, and B is injured or taken ill under circumstances which make it apparently necessary to furnish medical or surgical attention at once, without notifying A, or obtaining his consent. Under such circumstances, it is held that if X furnishes medical or surgical services to B, he may recover from A." (Italics ours).

See also, *Tryon* v. *Dornfield*, 130 Minn., 198; *Cotnam* v. *Wisdom*, 83 Ark., 601, in which one of the plaintiffs was called as a consultant to assist another physician in an operation upon the injured party, whose estate was sued for the services of both.

In *Patterson* v. *Keys*, 1 Cincinnati Superior Court Reporter, 94, p. 100, it is said:

"In general an agent has no right to delegate his authority to a sub-agent without the assent of his principal. But where, from the nature of the agency, a sub-agent must necessarily be employed, the assent of the principal is implied. *Dorster & Milton Bank* v. *New England Bank*, 1 Cush., 177."

The judgment of the Municipal Court is reversed and the judgment entered in this court for the amount claimed and proven by the plaintiff as the reasonable value of his services.

---

The plaintiff in error is a physician, and filed suit in the sum of $30.00 in the Municipal Court against the defendant in error, for professional medical services rendered to the wife of the defendant. No statement of defense was made. Upon hearing in the Municipal Court, judgment was given for the defendant. This proceeding was brought to reverse that judgment.

By the bill of exceptions, which is but one page in length, it appears that the defendant and his wife were injured in an automobile accident, and in an informal statement made by the defendant in the trial, he said that "his wife was injured more than he, she was taken to St. Mary's Hospital, and he was taken to the city jail"; that an operation was immediately necessary and was performed by Doctor E. M. Keefe, who called upon the plaintiff to administer the anaesthetic to the wife of the defendant, as a private patient. A short time after, an additional operation was necessary, and the plaintiff rendered service in the same capacity. The testimony was that the charges were reasonable, and had not been paid.

No reasons were given for the action of the court below, but it has been suggested that it was based upon the ground that there was no express contract between the defendant and the plaintiff for the rendering of the services.

The plaintiff in error filed a brief, but there was no appearance in this court on behalf of the defendant in error.

There can be no doubt of the responsibility of the defendant for necessaries furnished to his wife. See General Code Section 7997; *Higbee Co.* v. *Crum*, 27 O. A., 107.

In *Kraft* v. *Wolf*, 3 N. P. (N. S.), 105 it is held:

"1. There can be no doubt that the services of a physician constitute necessaries under the law."

In *Cleveland Ry. Co.* v. *Kuncie*, 26 O. A., 275, it is held:

"* * * husband is bound to pay for medical services rendered to wife as necessaries; he not being excused from liability therefor because of Sections 7996, 7999 and 8000, General Code respectively, establishing husband as the head of the family, permitting spouses to contract with each other, and providing that parties cannot alter legal relations."

An express contract is not necessary in cases of emergency, etc. In *Cotnam* v. *Wisdom*, 83 Ark., 601 it is held:

"1. Where surgeons were called in to attend a person injured in an accident, and in the effort to save his life they performed an operation on him while he was unconscious, and he died without regaining consciousness, the law implies a contract on his part to pay a reasonable compensation for their services."

The facts in that case as to the employment of the surgeons are almost identical with these. The report shows (p. 602):

"The evidence showed that deceased received fatal injuries in a street car wreck; that while he was unconscious some person summoned Doctor Wisdom to attend him; that Doctor Wisdom called in Doctor Abel, an experienced surgeon to assist him; that they found that the patient was suffering from a fracture of the temporal and parietal bones, and that it was necessary to perform the operation of trephining; that the patient lived only a short time after the operation, and never regained consciousness."

The court charged the jury as follows:

"1. If you find from the evidence that plaintiffs rendered professional services as physicians and surgeons to the deceased, A. M. Harrison, in a sudden emergency following the deceased's injury in a street car wreck, in an endeavor to save his life, then you are instructed that

plaintiffs are entitled to recover from the estate of the said A. M. Harrison such sum as you may find from the evidence is a reasonable compensation for the services rendered."

In the opinion of the court, which sustained the charge quoted as a correct statement of law, the court on p. 604 say:

"Appellant is right in saying that the recovery must be sustained by a contract by implication of law, but is not right in saying that it is a new rule of law, for such contracts are almost as old as the English system of jurisprudence. They are usually called 'implied contracts'; more properly they should be called *quasi* contracts, or constructive contracts. See, 1 Page on Contracts, Sec. 14; also 2 Page on Contracts, Sec. 771."

Then follows a very clear discussion of the character of a contract implied by law. It is spoken of as a mere creation of the law. After discussing the nature of the obligation created in such cases by implication of law, the court says as follows, p. 606:

"In its practical application it sustains recovery for the physicians and nurses who render services for infants, insane persons and drunkards. 2 Page on Contracts, Sec. 867, 897 and 906. And services rendered by physicians to persons unconscious or helpless by reason of injury or sickness are in the same situation as those rendered to persons incapable of contracting, such as the case above describes. *Raoul* v. *Newman*, 59 Ga., 408; *Meyer* v. *K. of P.*, 64 L. R. A., 839.
"The court was therefore right in giving the instructions in question."

In *Tryon* v. *Dornfield*, 130 Minn., 198 the action was for medical and hospital services rendered to a dependent of the defendant in an emergency case. The statute charged the defendant with the duty of support of such dependent relative. It was held:

"In an action for the reasonable value of medical and hospital care, treatment and services rendered to a dependent relative in an emergency case, where there is an urgent requirement for both physician's services and

hospital care, imperative and admitting of no delay, it is held that plaintiff may recover from a relative upon whom rests the statutory duty to support such dependent relative, compensation for the reasonable value of such services, even though such services were rendered without the knowledge of the relative sought to be charged."

In 3 Page on the Law of Contracts, Sec. 1521, under the title "Services rendered in emergency to preserve human life", the author says:

"A case in which consideration of humanity control, and enable one who has rendered services without request to recover therefor, is found where medical or surgical attention is rendered to one who is injured or taken ill so that he is unconscious and unable either to request or forbid the rendition of such services. In cases of this sort the courts are confronted with the alternative of requiring the injured party to pay reasonable compensation for services rendered to him, or of saying that all who render services do so as a matter of charity or in reliance upon the generosity of the person for whom such services were rendered. While there is little authority upon this question, from the nature of the case it is held that the interests of the person who is injured require the law to impose a liability upon him for reasonable. compensation for such medical and surgical services. (Citing *Cotnam* v. *Wisdom*, 83 Ark., 601 *supra*.) * * * *Like considerations apply where A is chargeable with B's support, and B is injured or taken ill under circumstances which make it apparently necessary to furnish medical or surgical attention at once, without notifying A or obtaining his consent. Under such circumstances it is held that if X furnishes medical or surgical services to B he may recover from A.*" (Citing *Tryon* v. *Dornfield*, 130 Minn., 198. Italics ours.)

In 48 C. J., 1162 (Physicians and Surgeons Sec. 181) the rule is stated as follows:

"A physician or surgeon summoned in consultation by another may recover of the patient, compensation for his services, notwithstanding an agreement between the patient and the attending physician that the latter would pay for such services, unless the consulting physician expressly or impliedly assents to the agreement."

It is clear from the bill of exceptions, informal though it is, that when defendant's wife was taken to the hospital he was taken to the city jail. How long he remained there does not appear, but it is fair to assume that the operation was imperative, and performed in the interests of the defendant. The circumstances of the second operation do not appear, but it must again be assumed, in the absence of a showing to the contrary, that the operation was necessary. Whether it was performed at the hospital or at the defendant's home does not appear, but he got the benefit of the services beyond any question.

A statute of Ohio provides (General Code Sec. 12678):

"Whoever uses upon another an anaesthetic, unless at its administration, and during the whole time the person is wholly or partly under its influence, there is present a third person competent to be a witness, shall be fined not less than five dollars, nor more than twenty-five dollars."

Under this statute it was necessary that a witness should be present, and common knowledged teaches that where a surgical operation is performed the anaesthetic is not and cannot be administered by the operator.

The defendant was liable for necessaries for his wife. The services rendered were necessary. The cases cited show that the calling of a consultant in the interest of a patient is within the implied power of a physician.

In *Patterson* v. *Keys,* 1 Cincinnati Superior Court Reporter, 94, p. 100 it is said:

"In general an agent has no right to delegate his authority to a sub-agent without the assent of his principal. But where, from the nature of the agency a sub-agent must necessarily be employed, the assent of the principal is implied. *Dorster & Milton Bank* v. *New England Bank*, 1 Cush., 177."

The court is of the opinion therefore, that the plaintiff in error was entitled to recover. The judgment of the Municipal Court is reversed, and judgment entered in this court for the amount claimed and proven by the plaintiff as the reasonable value of his services.